**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

LAUREATE EDUCATION, INC.,

                           *

    Plaintiff,

                           *

    v.                        Civil Action No.   AW-10-749

                           *

NIVINE MEGAHED, *et al.*,

                           *

    Defendants.

                      ******

## <u>MEMORANDUM OPINION</u>

Plaintiff has filed a claim for breach of contract, misappropriation of trade secrets, and tortious interference of contract arising from the employment of one of its former employees with an alleged competitor.  Pending before the Court are the following motions: (1) Defendant Megahed's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 12); (2) Defendants' joint Motion to Dismiss for Failure to State a Claim (Doc. No. 20); (3) Defendants' joint Motion for Transfer of Venue (Doc. No. 21); and (4) Plaintiff's Motion to Strike New Facts (Doc. No. 35).[1]  The Court held a hearing on these motions on June 28, 2010, which are now ripe for ruling.  As more fully discussed below, the Court denies both of Defendants' Motions to Dismiss. grants Defendants' Motion for Transfer of Venue, and denies Plaintiff's Motion to Strike New Facts.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff Laureate Education, Incorporated ("Laureate") is a Maryland corporation whose headquarters are in Baltimore, Maryland.  Laureate is a for-profit educational services company that owns and operates educational institutions in several states and more than twenty (20)

---

[1] The Court also notes that Plaintiff's Motion for Preliminary Injunction (Doc. No. 3) and Motion for Amended Complaint (Doc. No. 38) are pending but are not ripe for review.

countries.  In 2004, Plaintiff began negotiations to purchase Kendall College ("Kendall"), an educational institution based in Chicago, Illinois.  In 2006, Kendall began its search for a new president, and Defendant Dr. Nivine Megahed ("Megahed") was a candidate for the position.  During 2006, as part of her interview process with Kendall, Megahed also traveled to Baltimore, Maryland, on multiple occasions to meet with executives of Laureate because of Laureate's "financial interest in Kendall."  (Doc. No. 26, 2-3.)  Megahed became president and chief executive officer of Kendall in 2006, and relocated to Chicago from Florida.  Plaintiff contends that Megahed was aware of Laureate's option agreement to purchase Kendall and that Kendall hired Megahed "on condition that . . . she also be available to travel regularly to Baltimore to consult with Laureate's management."  (Doc. No. 26, 3.)

Throughout her tenure with Kendall, Megahed worked with senior management of Laureate in anticipation of Laureate's acquisition of Kendall.  Laureate made Megahed a member of the board of directors for Walden University, Plaintiff's online school, on January 10, 2008, which made her eligible for a stock option of 470,000 shares of Laureate stock.  The stock option was conditioned on Megahed signing a non-disclosure and non-competition agreement ("Stockholder Agreement"). The Stockholder Agreement generally prohibits Megahed from disclosing or using any of Laureate's confidential business information and imposes a two-year restraint on Megahed's ability to compete with Laureate.  Moreover, the Agreement includes a provision that Maryland law governs any disputes arising under the agreement and any arbitration of disputes will take place in Baltimore.  Megahed signed the Stockholder Agreement in February 2008.

Laureate purchased Kendall in July 2008.  Thereafter, Megahed became an employee of Laureate, was paid from Laureate's payroll system administered in Baltimore, and participated in

Laureate's benefit program managed in Baltimore.  Prior to this time, in the summer of 2007, Megahed worked with Baltimore employees of Laureate in the purchase of the New School of Architecture and Design ("NSAD") operated in San Diego, California.  After Laureate acquired NSAD in July 2008, Megahed was appointed to oversee the NSAD and became one its board members.  Megahed also became a member of Laureate's Executive Committee around this time.  In November 2008, Megahed executed a "Confidentiality, Non-Disclosure, No Solicitation Agreement and Covenant Not to Compete" ("Second Agreement") with Laureate, which Laureate claims was an employment agreement given in exchange for Megahed's continued employment with Laureate and a generous compensation package.  The Second Agreement prohibits Megahed from disclosing or using Laureate's confidential business information.  It also has a non-competition provision which provides that for one-year after termination of her employment with Laureate that Megahed will not:

> directly or indirectly, in any capacity whatsoever anywhere in the world where Laureate . . . [or its affiliates] does business, or was active in developing a strategy to conduct business, either on [her] own . . . [or on behalf of any person or entity with whom she is employed or associated] compete with Laureate or interfere with the business relationships of Laureate in any of the lines of business in which Laureate is engaged as of the date of this Agreement, and for which line or lines of business [she] shall have in the course of [her] employment with Laureate provided services or held duties or responsibilities.

(Doc. No. 1 Ex. 1, 2.)  Like the Stockholder Agreement, the Second Agreement contains a provision that Maryland law shall govern disputes arising from the agreement and for arbitration to take place in Maryland.  At the hearing, the parties represented that Megahed signed both agreements in Chicago, and apparently faxed them to Laureate's Baltimore office.  Plaintiff also alleges that Megahed signed a similar stock option agreement shortly before she resigned, but asserts that this third agreement is not at issue in this case.

In 2008, Megahed traveled to Baltimore ten (10) times, several of which were overnight trips, for training and administrative meetings in which she acquired knowledge about Laureate's trade secret information such as business strategies for operating educational institutions and for acquiring new institutions. Megahed also traveled to Baltimore for further meetings and training at least twelve times in 2009 and at least three times in the first two months of 2010. Furthermore, Plaintiff alleges that Megahed engaged in weekly, and often daily, wireless and telephonic communications with management personnel located in Maryland concerning Laureate's confidential information, plans for future acquisitions, and operation of Laureate's satellite institutions.

On January 13, 2010, Megahed informed Paula Singer, president of Laureate, that she intended to resign from her position with Laureate in Singer's office in Baltimore. (Doc. No. 26, 8). The two discussed Megahed's concerns and Singer requested that Megahed reconsider her intentions. Megahed allegedly called Singer from Chicago and told her that she intended to stay with Laureate on January 19, 2010. Thereafter, Megahed traveled to Baltimore in February 2010 to attend two meetings, one of which was overnight, to discuss the future strategy of Laureate and learned, inter alia, about Laureate's financial forecast and plans for new programs. However, on March 4, 2010, Megahed called Singer and explained that she intended to resign with Laureate and to take a position as the president of National-Louis University ("National-Louis"), which is an Illinois Corporation operating as non-profit educational institution in Chicago. Singer informed Megahed that taking such a position would mean that Megahed was going to work for a competitor, and Laureate asked Megahed to return all confidential information. On March 8, 2010, Laureate's general counsel wrote National-Louis to protest the

hiring of Megahed. Nonetheless, National-Louis announced Megahed's presidency of the institution the same day.

On March 25, 2010, Plaintiff filed suit and a Motion for Temporary Restraining Order and Preliminary Injunction in the Circuit Court for Prince George's County, Maryland, claiming breach of contract, tortious interference with contract, and misappropriation of trade secrets. The circuit court judge denied the temporary restraining order request. Subsequently, Defendants removed the case to this court on diversity of citizenship grounds. Defendants jointly filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, to Transfer Venue on April 1, 2010. The Court held a status conference on April 2, 2010, on Plaintiff's renewed Motion for Temporary Restraining Order, which the Court denied. However, given the pending motion to dismiss for lack of personal jurisdiction and Plaintiff's request for discovery on the issues raised in that motion, the Court permitted Plaintiff to conduct limited discovery to respond to the jurisdictional challenge. Defendants also jointly filed a Motion to Dismiss for Failure to State a Claim on April 27, 2010. Defendant National-Louis withdrew its request for dismissal for lack of personal jurisdiction and filed a substitute Motion for Transfer of Venue on June 1, 2010, which Megahed joined. These three pending motions have been fully briefed. Plaintiff filed a Motion to Strike New Facts concerning Defendants' reply motion to transfer, to which Defendants have responded. Lastly, Plaintiff filed a Motion for Second Amended Complaint on June 22, 2010, which does not require a response from Defendants until July 9, 2010.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). When a court addresses the question of jurisdiction based only on the pleadings, the allegations in the complaint, the

motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a *prima facie* showing of a sufficient basis for jurisdiction. *Id.*; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005). In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *see also Dring v. Sullivan,* 423 F. Supp. 2d 540, 543 (D. Md. 2006). Since this Court has not conducted any evidentiary hearing, Plaintiff only has the burden to establish a *prima facie* case for jurisdiction.

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Generally, a complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, the Supreme Court has directed courts that "Rule 8 still requires a 'showing,'" of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual

allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

## ANALYSIS

### I. Motion to Dismiss for Lack of Personal Jurisdiction

Defendant National-Louis has withdrawn its Motion to Dismiss for Lack of Personal Jurisdiction, essentially conceding to this Court's exercise of jurisdiction over it in this case; however it still seeks a Motion for Transfer of Venue. Defendant Megahed maintains that the Court lacks personal jurisdiction over her and wishes to proceed with the Motion to Dismiss on that basis. Accordingly, the Court will only consider whether it can exercise personal jurisdiction over Defendant Megahed.

A district court's exercise of personal jurisdiction over a nonresident defendant must comply with the requirements of both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). As the Maryland Court of Appeals recently explained, "although the statutory and constitutional inquiry are not mutually exclusive," the analysis under these two grounds merge, as this Court has held that the "long-arm statute represents an effort by the Legislature to expand the boundaries of permissible *in personam jurisdiction* to the limit permitted by the Federal Constitution." *CSR, Ltd. v. Taylor*, 983 A.2d 492, 502 (Md. 2009) ("In other words, 'if to exercise . . . jurisdiction in a given case would violate Due Process, we construe our long-arm statute as not authorizing the exercise of personal jurisdiction over the defendant.") (citation omitted). Nevertheless, the Court is reminded that it should not "simply dispense with analysis under the long-arm statute." *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 910 (D. Md. 2008) (citations omitted). Thus, if the Court finds that the

exercise of personal jurisdiction is not constitutional, it need not engage in an analysis of the application of the long-arm statute. Accordingly, the Court begins its discussion with an analysis of the constitutional requirements for exercising personal jurisdiction over Defendant Megahed.

### A. Due Process Clause of the Fourteenth Amendment

States may exercise personal jurisdiction over an out-of-state defendant only if the defendant has established "minimum contacts" with the state, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Cernia Corp. v. Jarrad*, 203 F.3d 312, 317 (4th Cir. 2000) (quoting *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 297 (1980)); *see also CSR, Ltd.*, 983 A.2d at 503. The critical issue in determining whether the defendant has established minimum contacts with the forum state is an analysis of whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) ("It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). Minimum contacts can give rise to either general jurisdiction, in which the cause of action does not relate to the contacts but the contacts are so "continuous and systematic" that jurisdiction is proper, or specific jurisdiction, where the cause of action arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984); *Burger King Corp.,* 471 U.S. at 472 (citation omitted).

Given Plaintiff's contention that Defendant Megahed's contacts with Maryland arise from her employment relationship with Laureate Education, which is the basis for the claims in this suit, it appears that the Court need only consider whether Megahed's contacts satisfy specific jurisdiction. In considering an assertion of specific personal jurisdiction, the Fourth Circuit has

articulated the following three-part test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). This is not a mechanical test, but requires the court to look at the "quality and nature" of the contacts, not merely count the number of contacts. *Id.* (*quoting Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 238 (D. Md. 1992)). Courts can look to several nonexclusive factors in deciding whether a defendant has established sufficient minimum contacts, such as:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; whether the performance of the contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278. Moreover, in determining whether the exercise of personal jurisdiction over the defendant is reasonable, the courts look to factors such as:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.* at 279.

Plaintiff relies on the Fourth Circuit's ruling in *Ciena Corp.* to establish that Defendant Megahed has sufficient contacts with Maryland by way of her employment with Plaintiff and her

regular travels to Maryland in furtherance of her employment. In *Ciena Corp.*, the court ruled that this Court had personal jurisdiction over the defendant in a suit for breach of the defendant's non-compete and non-disclosure agreement with her employer and misappropriation of trade secrets because she signed the agreement in Maryland, attended monthly training and administrative meetings in Maryland during her two-year tenure with her employer, and acquired knowledge about her employer's trade secrets during these regular meetings in Maryland. 203 F.3d at 317-18; *see also Prod. Group Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788 (E.D. Va. 2004) (holding that a defendant employee's acceptance of a position of employment with an employer based in the forum state, his regular communications with the employer's agents in the forum state, and his three trips to the forum state in the fulfillment of his employment responsibilities all support a finding that defendant purposefully availed himself in the forum state). Plaintiff argues that Defendant Megahed's contacts with Maryland are essentially the same as the defendant employee's contacts in *Ciena Corp.*

Defendant Megahed argues that the holding in *Ciena Corp.* is not binding because it did not discuss the Maryland long-arm statute, and according to Defendant's interpretation of the Court's decision in *Technology Patents, LLC*, such an omission is now improper in this jurisdiction. However, as discussed above, the Maryland Court of Appeals recently explained that the analysis of personal jurisdiction under the long-arm statute and the Due Process Clause of the Fourteenth Amendment merge, although the two "are not mutually exclusive." *CSR, Ltd.*, 983 A.2d at 502. Thus, the Court finds that the holding in *Ciena Corp.* is not to be ignored simply because it only discusses the due process analysis of personal jurisdiction. Next, Defendant contends that *Ciena Corp.* is not applicable because it did not engage in a discussion of the factors set-forth in *Consulting Engineers Corp.* However, the Fourth Circuit in *Consulting*

*Engineers Corp.*, explained that because the minimum contacts analysis "is not susceptible of mechanical application, . . . , courts have considered various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." 561 F.3d at 278. The court also stated that these factors were "not limited" to the ones enumerated in that list. *Id.* Moreover, all but one of the factors were gathered from cases decided prior to *Ciena Corp.*, and unlike Defendant's characterization, do not constitute as a newly formed test. The Court believes that a close reading of *Ciena Corp.* demonstrates that court did consider these factors even though it did not directly label each factor in its discussion. Thus, the Court is unconvinced that it should not look to *Ciena Corp.* for guidance on this issue.

Nonetheless, the Court believes that a consideration of the factors enumerated in the *Consulting Engineers Corp.* demonstrates that Defendant Megahed has sufficient minimum contacts with Maryland for this Court to properly exercise personal jurisdiction over her. The Court agrees with Defendant that there has been no allegation that she maintains offices in Maryland, or that she owns property in this state. Moreover, the Court agrees with Defendant that she primarily performed her job responsibilities in Chicago. The Court is also persuaded that Defendant Megahed did not deliberately attempt to initiate business in the State of Maryland because she sought to obtain employment with a Chicago-based educational institution, which happened to be subsequently purchased by the Maryland-based Plaintiff.

However, the remaining factors weigh in favor of the Court's exercise of personal jurisdiction over the Defendant. As the Plaintiff points out, Defendant Megahed continued to work in her position at Kendall College after it was purchased by Laureate and was paid from Plaintiff's payroll account located in Maryland. Defendant has engaged in what appears to be monthly in-person meetings and training sessions with Plaintiff's agents in Maryland. The Court

is reminded that a defendant "need not physically enter the forum State" before jurisdiction of her person is proper, and that wireless communications are considered. *Burger King Corp.*, 417 U.S. at 476. Accordingly, in addition to monthly in-person meetings with Plaintiff's agents, Defendant has engaged in weekly, and at times daily, communications via telephone or e-mail communications about Plaintiff's business endeavors with Plaintiff's agents who resided in Maryland.

Defendant argues that under this Court's holding in *Mates v. North American Vaccine, Incorp.*, 53 F. Supp. 2d 814, 820 (D. Md. 1999) that her business trips and communications with the Plaintiff cannot be used to assert personal jurisdiction over her because these contacts only relate to her employment relationship with Plaintiff and were not personal. The Court believes that *Mates* and the other cases cited by Defendant merely stand for the position that an employee's contacts with a forum state cannot be established solely by the activities of his or her employer. *Calder v. Jones*, 456 U.S. 783, 789-90 (1984), a case cited by this Court in *Mates*, held that the writers and editors of an allegedly defamatory newspaper article about the plaintiff, who was a California resident, should have expected to be sued in a California court although they wrote the article in Florida for their employer, the National Enquirer. The Court explained that although their contacts were "not to be judged according to their employer's activities there" the defendants' "status as employees [did] not somehow insulate them from jurisdiction," and that the fact that they were "primary participants in an alleged wrongdoing intentionally directed at a California resident" made jurisdiction proper in California. *Id.* Here, the corporation is seeking to enforce an employment agreement against one of its employees claiming that the employee breached the agreement in her own right, not on behalf of her employer, and thus she

is the primary participant in the alleged breach and misappropriation of trade secrets in this case. Therefore, application of the holding in *Mates* to this case is misplaced.

All of these facts show that Megahed had deliberate business dealings in Maryland. In addition to regularly traveling to Maryland, Defendant acquired confidential information about the Plaintiff's business practices that serve as the basis of the claims asserted against her. Lastly, the agreement at issue has a choice of law provision indicating that Maryland law will govern any disputes arising under the agreement and under the holding in *Burger King Corp.*, this provision should not be ignored even if it does not include a forum selection provision. The Court believes that the holding in *Ciena Corp.* and *Production Group International Inc.*, in which out-of-state employees were found to have established minimum contacts as a result of regularly traveling to the state in which the employer sought to enforce its non-compete and non-disclosure agreements for training and meetings, as well as regularly engaging in wireless communications about the business with employees residing in that state, are very persuasive. Thus, the Court finds that Defendant, in furtherance of her employment with Laureate, has purposefully availed herself of the privilege of conducting business in the State of Maryland sufficient enough that she should have expected the possibility of being sued in a Maryland court for claims arising from these contacts. Moreover, the Court believes that the exercise of personal jurisdiction over Defendant is reasonable given all of the factors outlined above and Maryland courts' interest in upholding employment-related contracts and the Plaintiff's interest in getting relief in the state where it is headquartered.

### B. Maryland Long-arm Statute

The relevant Maryland long-arm statute provisions at issue are sections 6-103(b)(1), (3), and (4), which provide that "a court may exercise jurisdiction over a person, who directly or by an agent":

(1)　Transacts any business or performs any character of work or service in the State; . . .

(3) Contracts to supply . . . services . . . in the State; [or] . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from . . . services . . . used or consumed in the State . . . .

Md. Code. Ann., Cts. & Jud. Proc. § 6-103(b) (West 2010).  Furthermore, given that section 6-103 serves as the only basis for acquiring personal jurisdiction over Defendant Megahed, she "may be sued only on a cause of action arising from any act enumerated in this section." *Id.* § 6-103(a).  Here, section 6-103(a) is satisfied because Plaintiff is pursuing claims of breach of contract and misappropriation of trade secrets against Defendant Megahed, which Plaintiff alleges arise out of an employment contract between it and Defendant.

As articulated by this Court in *Technology Patents, LLC*, "in deciding whether the requirements of subsection [106](b)(1) are met, the Court must determine whether the foreign [d]efendants' actions culminate in 'purposeful activity' within the state of Maryland."  573 F. Supp. 2d at 910.  As the Court has discussed above, Defendant Megahed engaged in "purposeful activity" within Maryland by regularly attending meetings and trainings concerning the Plaintiff's proprietary information in the Plaintiff's Baltimore headquarters and via telephonic and wireless communications.

Next, Plaintiff contends that section 106(b)(3) is met because Defendant Megahed's employment contract requires her to travel to Baltimore where she learned of the confidential information, and it is the misappropriation of this information that serves as one of the primary claims in this case.  Defendant has not directly addressed section 106(b)(3), but contends that Plaintiff's job responsibilities were to be carried out in Chicago.  A review of the confidentiality and non-disclosure agreement does not appear to contain any language about where Defendant's

services are to be performed.  Thus, the Court does not find that Megahed contracted to perform her services in Maryland.

Lastly, section 106(b)(4) requires that the defendant cause a tortious injury, either within or outside of the state by an act committed inside or outside of the State, but only if the defendant is said to engage in regular business within the state.  For purposes of addressing a motion to dismiss for lack of personal jurisdiction, the Court must accept as true, Plaintiff's allegation that Defendant Megahed has or threatens to misappropriate Laureate's trade secret information by revealing the same to her current employer.  Thus, the Court finds that Defendant's purported actions have or will cause tortious injury to Plaintiff who operates several educational campuses throughout the country.  Moreover, because the Court has already found Defendant to regularly conduct business in the State of Maryland, the Court believes that the requirements of section 106(b)(4) are satisfied.

Accordingly, the Court finds that sections 106(b)(1) and (b)(4) of the Maryland long-arm statute are satisfied and provide sufficient grounds for the Court to exercise personal jurisdiction over Defendant.  Therefore, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is denied. Even if the Court were to find that it did not have personal jurisdiction of Megahed, it would not dismiss the case but instead would transfer the matter to the federal district court of Illinois.


**II.     Motion for Transfer of Venue**

Other than Defendant Megahed's contention that this Court lacks personal jurisdiction over her, which, as discussed above, is without merit, neither Defendant asserts that venue is improper in this Court.  Instead, Defendants seek to transfer this case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).  Under § 1404(a),

even if venue is proper in a particular federal district court, the district court may transfer "any civil action to any other district or division where it might have been brought."  In transferring a case under § 1404(a), the district court considers the following factors: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  "To prevail on a motion to transfer venue under § 1404, 'the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice.'"  *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004) (citations omitted).  In deciding whether to transfer a case, the court considers the following factors:

> (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Id.*

Defendants argue that the case should be transferred to the Northern District of Illinois because the operative facts related to the alleged breach, interference, and misappropriation claims, if any, occurred in Chicago; most of the witnesses reside in Illinois, and the colleges

primarily involved in the litigation are located in Chicago. Plaintiff counters that its choice of forum should be afforded substantial weight because it is headquartered in Maryland, substantial facts related to its claims took place in Maryland, and its contracts require Maryland law to govern the breach of contract claim. Neither party disputes that the case could have been brought in Illinois.

Plaintiff is correct that its choice of forum is generally given substantial weight. However, "when the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005). Plaintiff has undoubtedly chosen to bring this case in its "home forum" because it is headquartered in Maryland and does substantial business here. The Court also accepts Plaintiff's contention that many relevant facts concerning Defendant Megahed's employment with Plaintiff and the confidential information that she received from Plaintiff occurred in Maryland. Nevertheless, it appears to the Court that the operative facts, namely the alleged act of breach, misappropriation, and interference with contract, occurred in Chicago, Illinois, where both of the Defendants reside. All of the discussions concerning Megahed's selection as the president of National-Louis took place in Chicago and any alleged misappropriation by Defendants most likely happened in Chicago. Accordingly, although the Court does not find that Plaintiff's chosen forum is insignificant, it believes that it should be accorded less weight because the operative facts transpired in the district where Defendants seek to transfer this case.

The Court believes that one of the parties will be inconvenienced by litigating the case in either venue because both parties have witnesses in both jurisdictions and documentation exists in both locations. Thus, the Court primarily looks at the convenience of the witnesses. Witness

convenience and access to sources of proof is "often the most important" in considering a motion to transfer under § 1404(a); however, the court is reminded that this factor is not a "numbers game" based solely on which party has the longest list of witnesses. *Samsung Elecs. Co.*, 386 F. Supp. 2d at 719; *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008). Instead, "the party asserting witness inconvenience has the burden to proffer, *by affidavit or otherwise*, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Samsung Elecs. Co.*, 386 F. Supp. 2d at 716 (emphasis added). As the court in *Samsung* articulated, "greater weight should be accorded to the inconvenience of witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue," when compared to cumulative witness testimony. *Id.* at 718. In considering the convenience of witnesses, the court distinguishes between party-witnesses, which are the "parties themselves and those closely aligned with a party" and non-party witnesses. *Samsung Elecs. Co.*, 386 F. Supp. 2d at 718. Inconvenience to party-witnesses is given less weight because they are presumed to be more willing to travel to testify than non-party witnesses. *Id.* Furthermore, the moving party must show that the witness is unwilling to travel to testify, otherwise, mere assertion that the court has no power to subpoena the witness is unavailing. *Id.*

First, the Court is not persuaded by Defendants' argument that the Court lacks subpoena power over some of its witnesses because Defendants have made no showing that any such witnesses are unwilling to testify in Maryland. Moreover, the Court agrees with Plaintiff that Defendants' witnesses, who all appear to be individuals involved in the process of selecting Megahed as president of National-Louis or employees of Laureate working at Kendall College, are sufficiently aligned with Defendants and/or Plaintiff to be considered party-witnesses and are

presumed to be willing to travel. Furthermore, it appears that both parties have witnesses that will testify about important issues in this case, namely Plaintiff's witnesses will testify about background information involving Megahed's employment and acquisition of confidential information while Defendants' witnesses will presumably testify about the reasoning behind hiring Megahed as president of National-Louis and about any facts giving rise to or in defense of the alleged breach, misappropriation, or tortious interference.

The Court expresses no view on the extent to which either party's purported witnesses would be cumulative when compared to one another. However, the Court notes that all of Defendants' witnesses reside outside of Maryland, with most living or working in Chicago, and that even some of Plaintiff's witnesses reside and work in Chicago at Plaintiff's affiliate school, Kendall College. Additionally, it appears that all of Plaintiff's witnesses are executive or managerial personnel, while Defendants claim that many of their witnesses are volunteer members of the search committees responsible for selecting Megahed as the president of National-Louis who have other full-time jobs and commitments outside of their association with Defendants. Also, although not specifically raised by the parties, the Court notes that Plaintiff, as a large for-profit corporation, is likely to be in a better financial position to cover the cost of its approximately twelve management officials than National-Louis, a non-profit organization, or Megahed, an individual. Accordingly, the Court believes that the convenience of the witnesses weighs in favor of transferring the case.

Next, the Court addresses which venue would better serve the interests of justice, and finds that this factor weighs strongly in favor of transferring the case to the federal district court in Illinois. As Defendants argue, Illinois has a substantial interest in resolving disputes involving two of its local colleges, National-Louis and Kendall, which serve the community of Chicago.

Moreover, Illinois regulates these two schools. The Court understands that Kendall is owned by Laureate and thus the case does not solely involve these two Chicago schools; however, the Court notes that many of the operative facts took place between individuals at these schools. In addition, Laureate has not identified any interest in having Maryland courts resolve this claim other than it being headquartered in Maryland and Maryland's interest in providing a remedy to its injured residents. However, Defendants have shown a local interest that concerns individuals in the community, not just themselves as parties. Moreover, although Maryland law governs the breach of contract claim in this case, it does not necessarily apply to the other two claims. Nonetheless, the Court does not believe that the choice of law provision as to the contract claim will present a problem if the case were litigated in another federal court because such courts are often called upon to apply state law in cases brought to federal court for diversity of citizenship. Lastly, the Court notes that trial would likely be easier to schedule where most of the witnesses reside. Accordingly, the Court grants Defendants' Motion to Transfer to the Northern District of Illinois.[2]

## III.    Motion to Dismiss for Failure to State a Claim

Defendants argue that the restrictive covenant at issue is unenforceable because it is too broad and was entered into after Megahed began employment with Plaintiff. Moreover, Defendants assert that Plaintiff's Complaint fails to allege that Megahed has disclosed or has threatened to disclose its confidential information. Plaintiff counters that under Maryland law

---

[2] Plaintiff has filed a Motion to Strike alleged new facts raised in Defendants' reply brief to the Motion for Transfer of Venue. Specifically, Plaintiff seeks to strike Defendants' discussion of National-Louis' history of working with minorities and the affidavit of Richard Ross concerning the inconvenience to witnesses who served on the search committee as hearsay. Moreover, Plaintiff seeks to strike Defendants' allegation that Plaintiff omitted to list National-Louis as a competitor in documentation to the Attorney General for Illinois to support why an Illinois court had a substantial interest in resolving this matter. Plaintiff explains that the documentation only required Laureate to list its for-profit competitors, which explains the omission of National-Louis given that it is a non-profit organization. Defendants contend that many of these facts were raised in its opening brief, or that they were otherwise simply responding to claims raised in Plaintiff's opposition. In any event, neither of these facts would alter the outcome of the Court's decision. Thus the Court finds it unnecessary to strike these portions of the Defendants' reply, and denies Plaintiff's Motion to Strike.

the enforceability of restrictive covenants is based on a fact-specific analysis, which is not appropriate here because the factual record has not yet been developed. Plaintiff also points out, and Defendants conceded at the hearing, that there are no Maryland state or federal court cases dismissing a breach of contract claim based on the alleged unenforceability of the restrictive covenant. Additionally, Plaintiff contends that under Maryland law a one or two year limitation on employment with a competitor has been considered reasonable and that a world-wide geographic limitation is not per se invalid. Finally, Plaintiff argues that its allegation that Megahed will inevitably disclose some confidential information in carrying out her duties as president of National-Louis sufficiently states a claim and that it should be permitted the opportunity to conduct discovery to ascertain whether or not she has actually disclosed such information.

Both parties presented compelling arguments on the enforceability of the restrictive covenants at issue here. As the Court indicated during the hearing, the Court believes that it is generally more prudent to permit cases to develop a factual record before making judgments as a matter of law concerning claims where the plaintiff has at least pled some factual support. At this point in the litigation, the Court is not prepared to make a decision with respect to the enforceability of the restrictive covenants at issue in this case, or as to whether Defendants have or threaten to disclose the confidential information. Accordingly, the Defendants' Motion to Dismiss for Failure to State a Claim is denied without prejudice to the Defendants' right to reassert these arguments at a later date. In light of the Court's denial of the Defendants' 12(b)(6) motion, the Court also denies the parties' notices of supplemental authority.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, denies Defendants' Motion to Dismiss for Failure to State a Claim, grants

Defendants' Motion to Transfer Venue, and denies Plaintiff's Motion to Strike. The case is transferred to the United States District Court for the Northern District of Illinois. A separate order shall follow this Memorandum Opinion.


    July 1, 2010                            /s/              
        Date                           Alexander Williams, Jr.
                                       United States District Court Judge